SAMUEL HENSHAW, ESQ., Judge, &c., *versus* MARTHA BLOOD & AL.

An executor or administrator is not bound by the administration bond to inventory *real* estate.

THIS was an action of *debt*, brought in the name of *Samuel Henshaw*, Esq., judge of probate, &c., for this county, on an administration bond, against *Martha Blood* and *Hezekiah* [ \* 36 ] *Fiske*, \* administrators of the estate of *Isaiah Blood*, Jun., and their two sureties, for the benefit of *A, B, C,* &c., *creditors* of the intestate.

The defendants prayed oyer of the condition, which was in the form prescribed by the statute, *passed March 9th*, 1784, (*stat.* 1783, *c.* 36, § 8,) and pleaded in bar that the administrators from the time of making the writing obligatory aforesaid had well and faithfully observed, performed and kept all and every part of the things in the condition of the writing obligatory aforesaid, on their part to be observed, performed and fulfilled.

To this plea the plaintiff replied that the intestate, in his lifetime, *viz.*, on ——, at ——, was seised in fee simple of certain *real estate*, (*describing it*,) and that afterwards, *viz.*, on —— died so seised thereof, whereby the whole of the same real estate, of the value, as the plaintiff averred, of $2000, was and became the proper estate of the intestate at the time of his death; and when administration of the estate of the intestate was committed to the said *M.* and *H.*, (*viz.*, *on the 5th day of June*, 1798,) the *same real estate* came to the knowledge and into the hands and possession of the said *M.* and *H.* as the estate of the intestate, and at the date of the administration bond was, thenceforth, always hitherto hath been, and still is liable by law to be inventoried by them, the said *M.* and *H.*, as the estate of the intestate; and, in case the personal estate of the said intestate was insufficient for the payment of the debts of the intestate, to be administered by them, the said *M.* and *H.*, for the payment of the debts aforesaid. The plaintiff then averred that the personal estate of the intestate was insufficient to pay and satisfy the debts due and owing from him at the time of his death—that the administrators represented the estate of the intestate to be insolvent-- - that the commissioners to receive and examine the claims [ \* 37 ] \* against his estate were duly appointed—that *A, B, C,* &c., creditors of the intestate, for whose use and benefit *this* action is brought, duly proved their respective claims and demands under the said commission—that the same were severally

allowed by the commissioners, and that their doings and proceedings were duly returned into the Probate Court, and by the same court accepted, ratified and approved. The plaintiff then averred that the estate of the intestate, exclusive of the *real estate* above described, was *in fact* insolvent, and insufficient to pay the debts of the intestate—yet that the said *M.* and *H.,* well knowing the premises, did not, and each of them did not, make or cause to be made an inventory of the same real estate, or any part thereof, or exhibit or cause to be exhibited such inventory into the Probate Court for said county of *Hampshire* at or before the said fifth day of September next ensuing the date of the said writing obligatory, in the condition thereof specified, or at any time since—but that they always hitherto had, and each of them had, neglected, and still did unjustly neglect and refuse, to make inventory, and return the same to be administered for the payment of the debts of the intestate, although often thereto requested—and that at a court of probate for said county, holden at ——, on ——, they, the said *M.* and *H.,* having been duly cited to appear at the same probate court, and show cause why *said real estate* should not be inventoried and sold for the payment of the debts of the said intestate, it was duly ordered and decreed that the said *M.* and *H.* should return into the probate office for said county an inventory of *said real estate,* on receiving bonds from any creditor or creditors of the estate of said intestate, sufficient to indemnify the said *M.* and *H.* from all costs and charges which might thereafter arise in consequence of any suit or legal process for the recovery of *said real estate* * for [ * 38 ] the benefit of the creditors aforesaid, and for inventorying the same ; of which order and decree they the said *M.* and *H.,* thereafterwards, *viz.,* on the same day, had notice—which decree the plaintiff averred to be in full force, not reversed, annulled, or appealed from. The plaintiff then averred that *A,* aforesaid was then and there a creditor of the said intestate, and that afterwards, *viz.,* on ——, at ——, he, the said *A,* being then and there a creditor as aforesaid, tendered and offered to them, the said *M.* and *H.,* the bond of *C. D.* of ——, sufficient for all the purposes in said decree mentioned—but that the said *M.* and *H.* had always hitherto refused to accept said bond, or inventory *said real estate,* or any part thereof—all which the plaintiff is ready to verify, &c.

The defendants protesting that the intestate did not die seised of the *real estate* in the replication mentioned, nor of any part thereof, and that the said *M.* and *H.* duly inventoried all the estate, both real and personal, whereof the intestate died seised or possessed, which came to the hands, possession, or knowledge of the said *M*

3 *                                                                29

and *H.*, and whereof they had any notice, demurred generally—and the plaintiff joined in demurrer.

*J. Upham,* for the defendants, said that the condition of administration bonds, as prescribed by the statute of this commonwealth, was copied from the *English* form, enacted and provided by the 22 and 23 *Car.* 2, *c.* 10,—which related to personal estate only—that it was well known an administrator in *England* had nothing to do with the *real estate* of his intestate, in any case—it was, therefore, a fair presumption that *our own* legislature, having adopted and prescribed *that* form *here*, must have intended that it should extend to personal estate only—however this may be, it is clear the *words* of the condition do not extend to real estate—the words [ * 39 ] are, " that if the administrator do * make or cause to be made a true and perfect inventory *of all and singular the goods, chattels, rights, and credits of the deceased,*" &c., which cannot by any reasonable rule of construction comprehend real estate ; perhaps by a special action on the case an administrator might be made answerable for not inventorying real estate, as the statute makes it his duty to inventory *all* the estate of the deceased (*a*).

*Bliss,* for the *creditors,* did not contend that the literal meaning of the words of the condition would extend to real estate ; but he insisted that, as it was provided in the same *section* of the statute which prescribes the form of the bond to be given by an administrator, that *all the estate* of the deceased should be inventoried, the legislature had by necessary implication connected *that provision* with the form of the bond, and thereby declared that the condition was to inventory *real* as well as personal estate. In *that* section (*the 8th*) of the statute, it is enacted, " That administration shall be granted within thirty days after the death of any person intestate, and an inventory taken of *all the estate of the deceased,* within three months, *by three suitable persons appointed by and sworn before the judge of probate*—and that every administrator, before he shall enter upon the execution of that trust, shall give bond to the judge of probate, with good and sufficient sureties, upon condition, among other things, to make and return *a true inventory of the estate administered* on, into the probate office, &c.,—which bond shall be in the form following."—[*Here follows the form of the bond.*]

He further said that by the *third section* of this statute it was enacted that the *real estate* should stand chargeable with *all* the debts of the deceased, over and above what the *personal* [ * 40 ] * should be sufficient to pay—that this was not a new law ;

(*a*) *Quære of this,* and see the words *in italics,* in the 8*th* sect. of the statute cited by *Bliss.*

it was only reënacting what had been the law of *this state* for a great length of time—certainly ever since the year 1696—that from that time to the present, either the Supreme Judicial Court or the Courts of Common Pleas had had authority to license executors and administrators to make sale of a part or the whole, if necessary, of the *real estates* of deceased persons for the payment of the debts of the deceased, in all cases where the personal estate should be insufficient for that purpose—from this circumstance the implication was strong that it was *the duty* of executors and administrators, in such cases, to procure license to sell real estate—that this, however, did *not* rest *merely on implication*—for in the *8th sect.* of an *act passed March* 4, 1784, (*stat.* 1783, *c.* 32,) it is *expressly* enacted, " That when any executor or administrator shall neglect or unnecessarily delay to raise money out of the testator's or intestate's estate, by collecting the debts due to such estate, and by selling the personal estate, or *the real estate*, (if need be, and he has power or can obtain license to sell the same,) or shall neglect to pay what he has in his hands, and by *such neglect or delay* shall subject the testator's or intestate's *real* or personal estate to be taken in execution, *the same shall be deemed waste and unfaithful administration* in such executor or administrator." That by the act for the distribution of insolvent estates, *passed June* 15, 1784, (*stat.* 1784, *c.* 2,) the judge of probate is to order distribution of the *estate*, both *real* and personal, (the real estate being sold according to law,) to and among the creditors, &c.,—which supposes that the administrator is to inventory and administer the *real* as well as the personal *estate*—for how, otherwise, is the judge to know in what manner to make distribution? The *act of June* 20th, 1794, * (*stat.* [ * 41 ] 1794, *c.* 5,) in addition to the act for the distribution of insolvent estates, seems to be grounded on the same principle. From all these different legislative provisions on the subject, he contended that the *legislature* had ascertained and determined the extent and operation of administration bonds.

To show that the *judicial* courts had entertained the same opinion on this subject, he cited a case decided in *this* Court at *April term*, 1791, in this county. In *that* case, the executors of *Dickinson* brought their action against the administrators of *Hastings*, upon a promissory note made by *Hastings*, the intestate, in his lifetime, to *Dickinson* the testator—the defendants, the administrators, pleaded in bar that the estate of their intestate was *represented* insolvent, and was in *fact* so—that commissioners were appointed, &c.; that the plaintiffs, the executors, had made out their claim before the commissioners upon the same note then sued for, who received the claim, and in their report to the judge of probate stated

that they had allowed thereon the sum of £210 17s. 5d.; that the report was accepted, a decree of average and distribution made, by which the plaintiffs were entitled to receive £14 13s. 8d. 3q., which the defendants brought into Court, the decree having been made since the last continuance and before the plea filed, &c. The plaintiffs, protesting that the estate was not insolvent, &c., and that the whole estate was not inventoried, confessing the *representation* of insolvency, the proceedings of the commissioners, the decree, &c., replied, that the intestate, at the time of his death, was seised of certain *real estate* in fee simple, which was liable to the payment of his debts, and by law liable to be attached, and was in fact attached in the action; that this real estate was never inventoried nor accounted for by the administrators, the defendants, [ * 42 ] nor ever distributed or apportioned among the * creditors of the intestate, so that the plaintiffs had a right to attach and hold the same, to satisfy the demand in the action, &c.

The defendants, protesting that the intestate did not die seised of the said real estate, and that they had duly inventoried *all the estate, both real and personal,* whereof the intestate died seised or possessed, which came to their hands, possession, or knowledge, demurred generally, and the plaintiffs joined in demurrer.

The defendants relied upon the *express* words of the statute of June 15, 1784, (*stat.* 1784, *c.* 2,) for the distribution of insolvent estates, which enacts, that " no action brought against any executor or administrator after the estate *shall be represented insolvent,* shall be sustained," except in certain cases therein mentioned; of which the case then before the Court was not one.

The plaintiffs grounded their claim upon this, *viz.,* that their common law right could not be taken away unless by a clear, express prohibition of the statute, and that the case would be the same with them as with a creditor who had not come in under the commission, who, by the statute aforementioned, might maintain an action when he should find some other estate of the deceased, not inventoried or accounted for by the executor or administrator before distribution.

*By the Court.* " This is an action *primæ impressionis.* The plaintiffs have mistaken their remedy; their claim was ascertained by the commissioners; they had no need to bring a suit; if new effects are discovered, they can have a new dividend. *If an administrator refuses to inventory estate after notice, complaint should be lodged in the probate office, and if he still neglect, the remedy must be on his administration bond.* If his intestate had made a [ * 43 ] fraudulent conveyance, *the administrator, upon being * indemnified, might lend his name to the creditor, and bring a*

*suit against the* tertenant (1) ; *if the administrator refused,* the judge of probate might *direct a suit on his bond.*

If the effects could be recovered, the plaintiffs could only be entitled *pro rata. Judgment for the defendants."*

He also cited the case of *Lyon* vs. *Fisk & Al., Administrators,* in this Court, (*Sept.* 1800, *Hampshire,*) similar to the foregoing case of *Dickinson* vs. *Hastings,* and in which the pleadings were *substantially* the same, upon the authority of which, the Court gave judgment for the defendants.

*Upham,* in reply, said that the question *now* before the Court could not have had a direct decision in either of the cases cited, as in neither of those was the action on the administration bond.

This case was argued on *Wednesday,* the second day of this term ; on *Saturday,* the last day of the term, the Court delivered their opinions.

THACHER, J., stated it as his opinion that the replication was insufficient ; that an administration bond did not oblige an administrator to return an inventory of *real estate,* and that therefore there must be judgment for the defendants.

SEDGWICK, J., (after stating the pleadings.) The only question referred by this record to the decision of the Court, is the extent of

(1) No such suit could be maintained ; for an executor or administrator can never stand upon a better footing than his testator or intestate, who would be stopped by his own deed, and could not be permitted to allege a fraud whereto he was party (*a*). Neither is there any such necessity for, or convenience in, the sustaining such an action as seems to have been supposed by the Court when expressing the above opinion. A creditor in a suit against the administrator might obtain judgment against the goods and estates of the testator, and the execution which issued thereon might be levied upon any lands which had been *fraudulently* conveyed by the deceased, such fraudulent conveyance not being valid against creditors. For these points, and also a most luminous and comprehensive statement of the general doctrine " of the connection an administrator " or (it is presumed, when no particular authority relating to this subject is given by the will) an executor " has with the real estate of his intestate," or his testator, see the opinion of the Court delivered by *Parsons,* C. J., in *Drinkwater* vs. *Drinkwater,* post, vol. iv. 354.

It was also subsequently decided that an executor or administrator has *in no case* a right to the possession of the lands of the deceased, nor can ever maintain a real action to recover decision of the same, excepting (if it be an exception to the first branch of the position) when the suit is brought to foreclose a mortgage ; post, vol. v. 240, *Willard* vs. *Nason.*

When, however, the title *originally vests* in the executor or administrator, as where he levies an execution issuing upon a judgment founded upon a debt due to the deceased, upon the lands of the judgment debtor, he may, if the title be disputed, maintain a real action for such lands.—*ib.*

Such lands, as also those mortgaged to the deceased, whereof seisure or possession has been *recovered,* (or it is presumed in any wise obtained,) are to be *assets* in the hands of the executor or administrator.—*Stat.* 1788, *c.* 51.

(*a*) [By the *Revised Statutes,* the executor or administrator may enter and declare on his own seisin Chap. 71, sec. 13.—ED.]

the obligation of an administrator as to the inventory which he is to make of the estate of his intestate. Is it confined to "*goods and chattels, rights and credits,*" according to the technical meaning of those words, or does it extend to real estate of inheritance? The words are, "make, or cause to be made, a true and perfect inventory of all and singular, *the goods, chattels, rights and credits* of the said deceased, which have or shall come into the hands, possession or knowledge of the said administrators, or into the hands [ * 44 ] and possession of * any other person or persons for them, and the same so made do exhibit, or cause to be exhibited, into the registry of the Court of Probate, &c."—It is undoubtedly true that in all instances where a contract is reduced to writing, and the reason is strongest in the instance of a deed, the meaning of the parties and the extent of their obligations and duties are to be sought for in the writing only, unless there be in it some *latent* ambiguity ; and there is none in this case. When, then, the ad ministrators by this bond became obliged to make an inventory of the goods and chattels, rights and credits of their intestate, were they bound also to make an inventory of the real estate which had descended to his heirs; and of which they had not, *in words* bound themselves to make an inventory? Certainly the words import no such obligation, and to them only can we resort. That the words do not, of themselves, import such obligation is conceded by the counsel for the plaintiffs, and this I think is decisive of the merits of this case. But the counsel for the plaintiff says, " that we are to resort to the former part of the same *section* of the *act,* which prescribes the form of the administration bond, to know the kind of inventory which an administrator is to make ; and that from thence it will appear that he is bound to inventory not the goods and chattels, rights and credits only, but also the real estate of inheritance." In the first place, this would compel us to go out of the deed to find its meaning, which, by law, I think, we cannot do ; and in the next place, even if we could resort to this mean of in vestigation, I do not think that the meaning of the condition would be found to be such as is contended for. This *sect.* of the *act,* after prescribing the power and duty of the judge relative to granting administration, proceeds—" and the administrator shall [ * 45 ] give * bond, upon condition, among other things, to make and return a true inventory of the estate administered on, which bond shall be in the form following :"—Here, under the words, "*estate administered on,*" (the expression being indefinite,) it is insisted, is included as well the real as the personal estate ; and that this ought the rather to be the construction, because the real estate is by law put under the control of the administrator, and made liable

to the payment of debts, provided the *personal,* including the rights and credits, is insufficient. But to this it may be answered, that immediately on the death of the intestate, the real estate descends to his heirs, and is not even subject to the control of the administrator but on a contingency, which at that time is unknown,—the insufficiency of the personal estate and credits of the intestate; and, but in that event, the administrator has no right to enter upon, or in any manner intermeddle with, such real estate. The real estate is not, then, but in an event which is not and cannot be known, in any relation to the administration ; and there could result no use nor benefit from making an inventory of it. When, therefore, the legislature speaks generally of estate, it seems reasonable to believe that such only was intended as was in *any event* to be " administered on," and that *that* which is not ordinarily to go into the hands of an administrator is not comprehended.

As to the case of *Dickinson vs. Hastings,* which has been pressed on our consideration as deciding the point referred to the Court by this record, every thing that was then said, which relates to this case, was extrajudicial. As to the point adjudged, it is not necessary, now, to give an opinion—it will be the time to decide when the question shall come judicially before the Court. I am not, however, prepared to say, that the point there adjudged *is law. It is an attempt to bar a just debt, without [ * **46** ] satisfaction ; and there appears to be no object of public policy to justify it. As to the case of *Lyon* and *Fisk,* it was decided on the authority of *Dickinson* vs. *Hastings*—and if the latter be unfounded, the former must be so likewise. The defendants therefore must have judgment.

Dana, C. J. As these pleadings stand, the single question before the Court is, whether the administrators and their sureties are liable as having broken the condition of the bond upon which the present action is brought, by not having inventoried the real estate of the intestate. This depends entirely on the words of the condition of the bond (*a*).—[Here the *Ch. Justice* read the condition. The words are clearly confined to personal estate—all that an administrator undertakes by the bond, is to inventory and administer the personal estate—there is not to be found in the bond any trace of an undertaking to inventory real estate—the administrator, as such, has nothing to do with it—he cannot even enter upon it, or in any manner intermeddle with it, except where there is an insufficiency of the personal estate to pay the debts of the deceased—

(*a*) [The condition of the bond is now changed by the Revised Statutes, and real estate must be included in the inventory. *Ch.* 64, *sec.* 5. —Ed.]

when that happens, he has a right, upon being duly licensed, to sell and convey real estate by deed. There was a case in *Middlesex*, some years since, where an administrator actually sold real estate of his intestate, and received the purchase money—an action was brought on the bond against his sureties, because the administrator had not accounted for the proceeds of the sale, and the Court held that they were not liable by the bond.

As to the opinions said to be expressed by the Court in the cases cited by the counsel for the plaintiff, they were mere *obiter* opinions, and cannot be considered as binding.

[ * 47 ]  That difficulties exist as to the administration * of insolvent estates, is certain—but I do not undertake to say in what way the creditors ought to proceed—perhaps the subject requires legislative interference—be this as it may, I am clear that, in the case before the Court, the replication is insufficient, and that judgment must be entered for the defendants.

*Judgment for the defendants.*

STRONG, J., having been of counsel for one of the parties in the case of *Lyon* and *Fisk*, above cited, and which related to the same estate for the administration of which the bond in this case was entered into, declined giving an opinion. *But* there is no doubt that he was of the same opinion with the other judges. (1)

NOTE. By the *act* passed in 1692 (*Provin. stat.* 4 *W. & M. c.* 2, § 1.) for the settlement and distribution of the estates of intestates, it is provided, " that upon granting administration, the judge of probate shall take bond, with sureties, in manner as is directed by the statute of the *twenty-second and twenty-third of Charles the Second*." It has been said that at *that* time lands and tenements were not liable for the payment of debts, and that they were first made so by the act of 1696. (*Provin. stat.* 8 *W.* 3, c. 3.) If this be so, the legislature could not, by the act of 1692, (*Provin. stat.* 4 *W. & M. c.* 2.) have intended that the bond should extend to *real* estate. As the legislature, upon the revision of *that* act in 1784, has directed the form of the bond to be the same as before, which appears to be the fact from the form prescribed in the *last* act, the presumption seems to be conclusive that it was not intended to lay the administrator under any further obligation, *by the bond*, than that which results from the known, settled *technical* meaning of the words used in the condition.—Vide *post*, p. 204, *Prescott* vs. *Tarbell*

[The law has been altered by the *Revised Statutes*, *Ch.* 64, *sec.* 5.—ED.]

(1) The former *attorney-general* of this commonwealth, Mr. Sullivan, entertained an opinion hostile to this decision of the Court. See his treatise on land titles, page 111.

It has been since decided (though consistently with this case) that when an administrator, having obtained a judgment against a debtor of his intestate, satisfies it by an extent on land, he is not so seised to *uses* as to vest the land in the heirs, &c., of his intestate, but has a *trust* estate until the settlement of the administration account, and may maintain an action in his own name, to recover possession against a disseisor vol. iv. 598, *Boylston* vs *Carver*